UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY D. CHEATHAM,

     *Plaintiff*,

v.

HEATHER L. HAYE,[1]
and BIDWELL,

     *Defendants*.[2]
_____/

CASE NO. 19-cv-10480
DISTRICT JUDGE TERRENCE G. BERG
MAGISTRATE JUDGE PATRICIA T. MORRIS

## REPORT AND RECOMMENDATION ON
## DEFENDANT HAYE'S MOTION TO DISMISS (ECF No. 25) AND
## DEFENDANT BIDWELL'S MOTION FOR SUMMARY JUDGMENT
## (ECF No. 34)

**I.   Introduction**

On February 15, 2019, Plaintiff Larry Cheatham filed this pro se action against the above Defendants and others since dismissed from the case. (Doc. 1). Currently before the Court are two motions: (1) Defendant Haye's Motion to Dismiss (ECF No. 25) and (2) Defendant Bidwell's motion for summary judgment (ECF No. 34.) For the reasons that follow, I **RECOMMEND GRANTING** both motions.

**II.   Report**

    **A.   Background**

---

[1] Defendant's name appears to be Hayes or Hays rather than Haye (ECF No. 25, PageID.106)("Haye (sic)"); however, since the docket indicates Haye and no order correcting the docket has entered, I will continue to use the name as referenced on the docket.

[2] Defendants Jane Doe, Joseph Barrett, Michigan Department of Corrections, and Heidi Washington were terminated from the case on June 17, 2019.

1

This case was originally slated for mediation and an Order staying the case was entered on June 25, 2019. (ECF No. 7.) However, the case was later excluded from the mediation program, the stay was lifted, and the case was returned to the Court's ordinary docket on July 29, 2019. (ECF No. 11.)

As to Defendants Haye and Bidwell, Plaintiff's complaint alleges he had his "last three remaining upper teeth surgically removed" on October 23, 2018, and that he "had been told he would immediately receive a Mechanical Diet due to such surgery which also required multiple stitches." (ECF No. 1, PageID.2.) Plaintiff then explains that "the dental assistant [Defendant Bidwell] deliberately/willfully and intentionally failed to order said Mechanical Diet ever as no order was placed during the DDS [Defendant Haye's] absence, who did not herself (the DDS) place the order for the Mechanical diet until 10-31-2018, and same wasn't available until 11-4-2018." ECF No. 1, PageID.3.) "[A]s a result [Plaintiff] lost around 8-pounds[.]" (ECF No.1, PageID.3.)

On October 4, 2019, Defendant Haye filed the instant motion to dismiss (ECF No. 25), Plaintiff responded (ECF No. 30, 31, 33) and Defendant Haye also responded. (ECF No. 32.) On November 19, 2019, Defendant Bidwell filed a motion for summary judgment (ECF No. 34), Plaintiff responded (ECF No. 35, 39) and Defendant Bidwell replied. (ECF No. 38.) The Court has considered all the arguments raised and analyzed in all of the above documents.

### B. Analysis and Conclusions

#### 1. Motion to Dismiss and Summary Judgment Standards

Defendant Haye has moved for dismissal under Federal Rule of Civil Procedure 12(b)(6). Such a motion tests the sufficiency of the complaint and will be granted if the plaintiffs have failed "to state a claim upon which relief can be granted." "The court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). But the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," otherwise the complaint will be dismissed. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard requires the plaintiff to "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555. (citations omitted). The complaint must include more than "labels and conclusions" and "formulaic recitation[s] of the elements of a cause of action . . . ." *Id.* When a plaintiff proceeds without counsel, the court must liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even *pro se* complaints must satisfy basic pleading requirements. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

Because the dismissal standard scrutinizes the pleadings, the Federal Rules limit courts' consideration of extraneous materials at this stage. Rule 12(d) provides the operative language: "If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." However, the court can consider certain materials

3

without converting the case. These include, among others, documents defendants attach to the motion to dismiss "'if they are referred to in the plaintiff's complaint and are central to her claim.'" *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assoc.'s Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). Also, "A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice." *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003). This includes judicial opinions and court filings in other cases. *See, e.g.*, *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426-27 & n.7 (3d Cir. 1999).

Defendant Bidwell has moved for summary judgment. When a movant shows that "no genuine dispute as to any material fact" exists, the court will grant his or her motion for summary judgment. Fed. R. Civ. P. 56(a). In reviewing such motion, the court must view all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). In making its determination, a court may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

4

The non-moving party cannot rest merely on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will appear later. 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2739 (3d ed. 1998). "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D. N.J. 2010). In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493.

When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. The court will rely on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992). After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the

evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

## 2. Defendant Haye's motion to dismiss (ECF No. 25)

Defendant Haye argues that service was untimely and that Plaintiff fails to state a claim against her because Plaintiff has alleged only weight loss of 8 pounds as his damages and that this claim fails to meet the physical injury requirement. (ECF No. 25, PageID.108-110.) Plaintiff responds that he has suffered "excruciating pain" and "pure hell" not just weight loss. (ECF No. 30, PageID.126.)

As to the service issue, Defendant Haye contends that "plaintiff's Complaint was filed 15 February 2019. Therefore, this Defendant not being served within ninety (90) days after the Complaint was filed, this Court must dismiss the action without prejudice against Heather L. Hayes[.]" (ECF No. 25, PageID.106.) This argument is a non-starter, however, because as indicated in the Order staying the case, the "90-day period for the defendant(s0 to be served under Federal Rule of Civil Procedure ('F.R.Civ.P.') 4(m) is tolled" until the stay is lifted and the 90-day period begins to run again. (ECF No.7, PageID.44-45.)

As to Defendant Haye's argument that the Plaintiff has alleged only weight loss of 8 pounds as his damages which fails to meet the physical injury requirement, I suggest that argument has merit.

The Prison Litigation Reform Act (PLRA) states:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).

6

42 U.S.C. § 1997e(e).[3] "Plaintiff alleges he has suffered weight loss as a result of being served certain foods he cannot chew; however. weight loss, in itself, has been deemed to be insufficient to demonstrate physical injury under the Prison Litigation Reform Act." *Rainey v. Huertas*, 2013 WL 491925, at *12 (D. Colo. Jan. 17, 2013)(collecting cases). Certainly Defendant suffered pain, as he described it, "excruciating pain" due to the dental work he underwent, but his Complaint did not allege that he had pain due to the food he was given nor did his later description of excruciating pain link the pain to the food he was given rather than the dental work he underwent. Accordingly, I suggest that Defendant Haye's motion should be granted on this ground.

### 3. Defendant Bidwell's motion (ECF No. 34)

Defendant Bidwell contends that Plaintiff failed to properly exhaust his administrative remedies as required under MDOC policy and thus, that the case should be dismissed. (ECF No. 34.) More specifically, Defendant Bidwell notes that although Plaintiff attempted to complain about not getting a mechanical diet as he was supposed to, his grievance, JCS-18-0743-28c, was rejected at Step I because it improperly raised multiple issues. (ECF No. 34, PageID.162.) The rejection of the grievance as improper was upheld at Steps II and III. (*Id*.) Defendant Bidwell provides an affidavit from Carolyn Nelson, Departmental Analyst, grievance report summaries, and copies of the rejected grievance JCS-18-0743-28c and the reasons stated for its rejection attached to her motion.

---

[3] In 2013, the statute was amended to add the phrase "or the commission of a sexual act (as defined in section 2246 of Title 18)." *See* Violence Against Women Reauthorization Act of 2013, Pub. L. No. 113-4, § 1101, 127 Stat. 54 (Sexual Abuse in Custodial Settings) (2013).

(ECF No. 34, PageID.176-189.) Defendant Bidwell also moves to dismiss any official capacity claims as violative of the Eleventh Amendment. (ECF No. 38, PageID.208.) Plaintiff responds that the grievance coordinator's conclusion that his grievance contained multiple issues was unfair since no one provided Plaintiff with guidance on how to correct his grievance. (ECF No. 35, PageID.191.)

Congress passed the Prison Litigation Reform Act of 1995 ("PLRA") "in response to a sharp rise in prisoner litigation in federal courts." *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). By passing the PLRA, Congress attempted to ensure that "the flood of nonmeritorious [prisoner civil rights] cases [did] not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 202 (2007). Congress equipped the PLRA with several mechanisms designed to reduce the quantity and increase the quality of the claims that came to federal court. *Id.* A "centerpiece" of the PLRA was the "invigorated" exhaustion requirement: "No action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e; *see also Woodford*, 548 U.S. at 84 ("A centerpiece of the PLRA's effort 'to reduce the quantity . . . of prisoner suits' is an 'invigorated' exhaustion provision.") (quoting *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). Courts consider the PLRA's suits "brought with respect to prison conditions" to include "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

The *Woodford* Court held that the PLRA's exhaustion of administrative remedies requires (1) that no remedies currently remain available, and (2) that the remedies that had been available to the prisoner were "properly" exhausted. 548 U.S. at 93. Prior to *Woodford* there were conflicting interpretations of the PLRA's exhaustion requirement. Some circuits interpreted the exhaustion requirement to mean that plaintiffs must have no more administrative remedies available before bringing their cases to federal court. *Id.* Others interpreted it to mean that plaintiffs must have "properly" exhausted their available remedies by following the agency's procedural requirements such as "deadlines and other critical procedural rules." *Id.*

In finding that exhaustion of remedies required "proper" exhaustion, the Court was persuaded by the "striking[]" similarities between the language of the PLRA and the doctrine of exhaustion in administrative law. *Id.* at 102. It also considered the purposes behind the exhaustion requirement, reasoning that an interpretation that did not require proper exhaustion would render the PLRA "toothless"–enabling a prisoner to bypass prison remedies by simply disregarding or ignoring deadlines. *Id.* at 95. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules." *Id*. at 90. Complaints and appeals must be filed "in the place, and at the time the prison's administrative rules require." *Id.* at 87 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

In *Jones*, the Court instructs us to look to the prison's policy itself when determining "whether a prisoner has properly exhausted administrative remedies–specifically, the level of detail required in a grievance to put the prison and individual on notice of the claim."

9

549 U.S. at 205, 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the *prison's requirements*, and not the PLRA, that define the boundaries of proper exhaustion." (emphasis added)). Specifically, the *Jones* Court was determining whether a plaintiff needed to identify the defendant by name during the initial grievance process. Since the MDOC's policy at the time did not require that level of specificity the Court did not find that the PLRA required it. *Id.* However, the current MDOC policy requires this level of specificity.

A plaintiff does not need to show proper exhaustion as a part of their complaint. *Jones*, 549 U.S. at 216. Rather, failure to properly exhaust remedies is now an affirmative defense. *Id.*

The MDOC provides prisoners with a grievance procedure for bringing forward their concerns and complaints. *See* MDOC Policy Directive ("PD") 03.02.130 (eff. July 9, 2007). The MDOC's grievance procedure consists of steps that a prisoner must follow prior to filing a complaint in court, and each step is accompanied by a time limit. First, the grievant must attempt to resolve the issue with the person involved "within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control . . . ." MDOC PD 03.02.130(P).

If the initial attempt to resolve the issue with the person involved is impossible or unsuccessful, the inmate must then submit a Step I grievance form within five days. MDOC PD 03.02.130(v). If the grievance is accepted, the prison staff is required to respond in writing to a Step I grievance within fifteen days, unless an extension is granted. MDOC

PD 03.02.130(X). The policy provides the following instructions regarding the information that needs to be included in a grievance:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

MDOC PD 03.02.130(R). If the inmate is not satisfied with the response, or does not receive a response within fifteen days, he must file a Step II appeal within ten business days. MDOC PD 03.02.130(BB). Once again, if the inmate is dissatisfied with the response at Step II or does not receive a Step II response within fifteen days, he has ten business days to submit a Step III appeal to the Prisoner Affairs Section. MDOC PD 03.02.130(FF). The Step III response concludes the administrative grievance process. According to MDOC policy, a grievance is not complete until the MDOC has responded to the Step III grievance. MDOC PD 03.02.130(B),(FF),(GG).

*Woodford* and *Jones* require inmates to file grievances that conform to MDOC procedures in order to properly exhaust available remedies. 548 U.S. at 93; 549 U.S. at 218. This includes a requirement that grievances will be rejected if "[i]t is vague, illegible, contains multiple unrelated issues, or raises issues that are duplicative…" MDOC PD 03.02.130(G).

Here, Plaintiff's grievance, JCS-18-0743-28c, was rejected at Step I because it improperly raised multiple issues. (ECF No. 34, PageID.162.) The rejection of the grievance as improper was upheld at Steps II and III. (*Id.*) In addition, an affidavit from the Departmental Analyst supports this with her statements and copies of the rejected

grievance JCS-18-0743-28c and the reasons stated for its rejection. (ECF No. 34, PageID.176-189.) I therefore suggest that because Plaintiff failed to follow the procedure required by the MDOC to properly exhaust his administrative remedies, Defendant's motion for summary judgment based on Plaintiff's failure to exhaust should be granted.

In addition, all claims levied against the Defendants in their official capacity should be dismissed. A lawsuit "against a governmental officer 'in his official capacity' is the same as a suit against the entity of which the officer is an agent." *McMillian v. Monroe County, Ala.*, 520 U.S. 781, 785 n.2 (1997) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Therefore, suing employees of state agencies or their political subdivisions in an official capacity is the same as suing the State of Michigan. The law is clear that regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts if the state has not waived immunity and Congress has not expressly abrogated Eleventh Amendment immunity by statute. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Since Congress has not abrogated Eleventh Amendment immunity by statute or expressly in § 1983, *see Hutzell v. Sayre*, 5 F.3d 996, 999 (6th Cir. 1993), and Michigan has not consented to suit, *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004), I suggest that the claims against Defendants in their official capacity are barred by Eleventh Amendment immunity and should be dismissed.

### III.   Conclusion

In light of the above analysis, **IT IS RECOMMENDED** that defendants' motions to dismiss and for summary judgment be **GRANTED** (ECF Nos. 25, 34).

### IV.   Review

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); see also 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled

as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  March 24, 2020

S/ PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge

## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record. A copy was also sent via First Class Mail to Larry D. Cheatham #172289 at Cooper Street Correctional Facility, 3100 Cooper Street, Jackson, MI 49201.

Date: March 24, 2020

By s/Kristen Castaneda
Case Manager